USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/07/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
 :
UNITED STATES OF AMERICA, :
 :
                              Plaintiff, :        13 Civ. 2227 (JMF)
 :
      -v- :        OPINION AND ORDER
 :
DAVID MOVTADY et al., :
 :
                           Defendants. :
 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       The United States (the "Government") sues Golden First Mortgage Corporation ("Golden First") and its owner and operator, David Movtady, alleging violations of the False Claims Act, 31 U.S.C. § 3729(a), and common-law claims of gross negligence, negligence, and breach of fiduciary duty. (Am. Compl. (Docket No. 16) ¶¶ 121-53). The gravamen of the Government's case is that Defendants falsely affirmed their compliance with the requirements of certain government-insured home mortgage programs and that, when loans insured by the Government went into default, the Government lost millions of dollars. (Am. Compl. ¶¶ 113-20). Defendants now move, pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint in its entirety. (Def.'s Mot. To Dismiss Am. Compl. (Docket No. 19); Def.'s Mem. Supp. Mot. To Dismiss Am. Compl. (Docket No. 20) ("Defs.' Mem.") 4-15). The Government opposes the motion only with respect to the False Claims Act claims, and expressly consents to dismissal of the common-law claims. (Mem. Law Opp'n Defs.' Mot. To Dismiss (Docket No. 23) ("Gov't's Mem.") 2 n.1). Accordingly, the motion to dismiss is granted with

respect to the common-law claims, and those claims are dismissed.  For the reasons stated below, however, the motion is otherwise denied.

## BACKGROUND

The following facts, which are taken from the Complaint unless otherwise noted, are assumed to be true for purposes of this motion.  *See, e.g.*, *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

**A.**     **The Direct Endorsement Lender Program**

The United States Department of Housing and Urban Development ("HUD"), through the Federal Housing Administration ("FHA"), insures approved lenders against losses on certain home mortgage loans.  (Am. Compl. ¶¶ 1, 13).  If a homeowner whose mortgage is FHA-insured defaults, HUD will pay the lender the balance of the loan and assume ownership of the property.  (Am. Compl. ¶ 13).  This insurance system makes FHA-backed mortgages more readily salable on the secondary market, because the risk of loss is limited by FHA's promise to repay, which in turn is guaranteed by the full faith and credit of the United States.  (*Id.*).  In that manner, FHA insurance encourages lenders to make home loans to creditworthy borrowers to whom the lenders might not otherwise offer a mortgage.  (*Id.*).  Put simply, FHA insurance turns mortgages that are otherwise risky investments into safer investments with its agreement to step in if the homeowner cannot pay.  Plainly, therefore, it is in the Government's interest to establish safeguards to ensure that relatively few FHA-insured mortgages enter default.

One program through which FHA insures home mortgages is the Direct Endorsement Lender ("DEL") program, and it does indeed include such safeguards.  (Am. Compl. ¶ 14).  Under the DEL program, approved lenders are authorized to underwrite mortgages, assess the creditworthiness of the loans, and certify loans as compliant with FHA's mortgage guidelines.

(*Id.*).  Relying on the expertise and good faith of approved DEL lenders, FHA will approve loans for mortgage insurance only if a DEL participant has certified the loan's compliance with FHA requirements regarding a borrower's financial status (including income, credit history, and the mortgaged property's asset value).  (Am. Compl. ¶¶ 14-15, 20-22).  Among other things, for example, DEL participants are required to "evaluate [each] mortgagor's credit characteristics," 24 C.F.R. § 203.5(d), and "have [each] property [to be mortgaged] appraised" according to HUD standards, 24 C.F.R. § 203.5(e)(1).  (*See also* Am. Compl. ¶ 18).

To ensure that those substantive requirements are met, HUD maintains a handbook imposing guidelines for due diligence on the part of DEL participants.  (Am. Compl. ¶ 19).  In addition to describing the required due diligence procedure, the relevant HUD handbook also requires DEL participants to maintain a quality-control program.  (Am. Compl. ¶ 23).  That program must include (1) randomized spot checks of a sample of closed loan files to ensure their compliance with HUD regulations; and (2) full review of all so-called "early payment defaults," which are loans that default within the first six required payments.  (*Id.*).  If, while conducting such quality controls, a DEL participant discovers any "[s]erious deficiencies, patterns of non-compliance, or fraud," the HUD handbook requires that the lender report such incidents, along with supporting documentation, to HUD.  (Am. Compl. ¶ 24 (alteration in original)).

> To demonstrate their compliance with the applicable regulations, and to maintain their DEL status, lenders must submit annual certifications to HUD.  (Am. Compl. ¶ 27).  The certification must include the following statement (in sum and substance):I know or am in the position to know, whether the operations of the above named mortgagee conform to HUD-FHA regulations, handbooks, and policies.  I certify that to the best of my knowledge, the above named mortgagee conforms to all HUD-FHA regulations necessary to maintain its HUD-FHA approval, and that the above-named mortgagee is fully responsible for all actions of its employees including those of its HUD-FHA approved branch offices.

(Am. Compl. ¶ 28).  The annual certification also requires DEL participants to affirm their use of the quality-control procedures mandated by the HUD handbook.  (Am. Compl. ¶ 29).

In addition to these annual certifications, DEL participants must submit a certification along with each loan for which they seek FHA insurance coverage.  (Am. Compl. ¶ 31).  That certification can be produced along with one of two forms: an automated underwriting system approved by FHA or a traditional underwriting system.  (*See* Am. Compl. ¶ 32).  Automated underwriting systems allow loan officers to input the loan information and, on the basis of the information entered, to receive an automatic rating from FHA, which can include (1) "accept" or "approve" or (2) "refer" or "caution."  (*See* Am. Compl. ¶¶ 33-34).  If a lender chooses to employ an automated system and that system produces a positive rating, the loan officer must nevertheless certify, among other things, the "integrity of the data supplied by the lender used to determine the quality of the loan."  (Am. Compl. ¶ 33).  By contrast, if the automated system produces a "refer" or "caution" rating, the loan officer may still certify the loan's eligibility for FHA insurance, but only by stating that (1) the automated system negatively rated the loan details, (2) a loan officer has personally reviewed the relevant loan information and documentation, and (3) the loan qualifies for FHA insurance under the terms and requirements of the DEL program.  (Am. Compl. ¶¶ 34-35).  Without such a certification, a DEL participant may not endorse a loan for FHA insurance.  (Am. Compl. ¶ 36).

**B.    Defendants' Allegedly Deficient Underwriting Practices**

Golden First, a New York company owned and operated by Movtady since 1979, is a mortgage lender that participated in the DEL program from 1989 until 2010.  (Am. Compl. ¶¶ 11-12).  The Government alleges that, during their participation in the DEL program, Defendants "egregiously violated" many of the rules and regulations discussed above.  (Am.

4

Compl. ¶ 37). In particular, the Government alleges violations in connection with both the annual-certification and the individual-loan-certification requirements. With respect to the former, the Government contends that Golden First, at Movtady's direction, did submit the required annual certifications, but that those certifications falsely affirmed the existence of a compliant quality-control program. (Am. Compl. ¶¶ 38-40, 43-56). With respect to the latter, the Government catalogs a series of loans that Golden First — and Movtady individually — certified as eligible for FHA insurance despite loan-documentation deficiencies (*see, e.g.*, Am. Compl. ¶¶ 61-63, 73-74, 83-84, 88-89, 93-94) and failures to meet the relevant substantive credit standards (*see, e.g.*, Am. Compl. ¶¶ 67-69, 78-79, 83-84, 88-89, 98-99, 103-04, 108-09).

In all, the Government alleges that Defendants' false certifications — of both the annual and per-loan varieties — permitted Golden First to close "nearly" 1,512 loans bearing FHA insurance since July 30, 2007. (Am. Compl. ¶ 113). For those loans, HUD has paid approximately $24,166,283 in claims and $1,282,623 in loss-mitigation payments. (Am. Compl. ¶ 118). For the subset of those loans that were underwritten by Movtady personally, HUD has paid approximately $2,252,607 in claims and $178,321 in loss-mitigation payments. (*Id.*). The Government claims that HUD may eventually be obligated to pay millions more dollars for as-yet unsubmitted claims arising out of Golden First mortgages issued with FHA insurance since July 30, 2007. (Am. Compl. ¶¶ 118-19).

## LEGAL STANDARDS

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court "must accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Schaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court will not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead

sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

## DISCUSSION

Defendants move to dismiss the Amended Complaint on four grounds: (1) that the claims at issue were not requests for payment by the Government and therefore cannot constitute false claims (Defs.' Mem. 4-8); (2) that certain of the claims are time barred under the False Claims Act (Defs.' Mem. 9-10); (3) that the causes of action under the False Claims Act are insufficient because they fail to adequately allege causation (Defs.' Mem. 10-11); and (4) that, to the extent the Government's claims sound in fraud, the Amended Complaint lacks the specificity required by Rule 9(b) (Defs.' Mem. 11-13). The Court will address each argument in turn.

The Government brings two distinct False Claims Act claims, pleaded in the alternative: one for *causing* false claims related to the submission of false individual-loan certifications, in violation of Title 31, United States Code, Section 3729(a)(1)(A) (Am. Compl. ¶¶ 121-25); and a second for the *use* of false statements related to the submission of both the individual-loan and annual certifications, in violation of Title 31, United States Code, Section 3729(a)(1)(B) (Am. Compl. ¶¶ 126-30). Defendants' first argument is that both claims are deficient because the

6

certifications were not "conditions of payment" and therefore cannot ground a False Claims Act claim. (Defs.' Mem. 4 (emphasis omitted)). Citing *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001), Defendants argue that false certifications of compliance may constitute false claims only if such certifications are a "condition" of payment. (Defs.' Mem. 4). As Defendants would have it, "general certifications of compliance with the law are insufficient to state a presentment of a false or fraudulent claim" (Defs.' Mem. 5), even if such certifications are required for ongoing participation in a program that involves the payment of claims.

This Court has already considered, and rejected, just that argument in a materially indistinguishable case. *See United States v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, No. 12 Civ. 7527 (JMF), 2013 WL 5312564, at *21-23 (S.D.N.Y. Sept. 24, 2013).[1] There, as here, the Government brought False Claims Act claims against a DEL participant based on its annual and individual-loan certifications. In rejecting an argument to dismiss on the same ground pressed here, the Court noted that it is "implicit in the submission of a claim for payment on a defaulted loan" that the submitter of the claim certifies that "the loan complies with the core eligibility requirements of" the DEL program. *Id.* at *23. In so holding, the Court explained why *Mikes* is inapposite to the type of False Claims Act claims at issue in this case: "[M]any, if not all, of the requirements [the mortgage underwriter] allegedly violated are themselves explicit conditions of eligibility for FHA insurance, and thus of payment." *Id.*[2] That is, substantially for the reasons stated in *Wells Fargo*, both the individual-loan and annual certifications at issue in this case are

---

[1]   Defendants did not have the benefit of the Court's decision in *Wells Fargo* when they filed their motion, as the Court issued the decision about one month later.

[2]   The Court also noted that the Second Circuit's holding in *Mikes* is, by its own terms, limited to the context of false claims submitted by medical providers. *See Wells Fargo*, 2013 WL 5312564, at *21 n.21; *accord United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 653 (S.D.N.Y. 2011) (noting that the Second Circuit's holding in *Mikes* was explicitly limited to the healthcare context).

explicit conditions for ongoing payments and therefore proper bases for False Claims Act claims, at least of the type pleaded by the Government in its Amended Complaint.  *See, e.g.*, *Wells Fargo*, 2013 WL 53126564, at *23; *see also, e.g.*, *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1176 (9th Cir. 2006) ("[Defendant] argues that the ban is merely a condition of *participation*, not a condition of *payment.*  But in this case, that is a distinction without a difference.  In the context of [this statute], if we held that conditions of participation were not conditions of payment, there would be no conditions of payment at all — and thus, [claimants] could flout the law at will."); *Hogar Mortg. & Fin. Servs., Inc.*, 08-8081-MR, *reprinted at* 74 Fed. Reg. 19582-15 (Apr. 29, 2009) (withdrawing FHA approval for a lender who failed to maintain a quality-control program as required).[3]

The more recent decision by the United States District Court for the Northern District of California in *United States v. Reunion Mortgage, Inc.*, No. C 13-02340 SBA, 2013 WL 5944252, at *5-6 (N.D. Cal. Nov. 5, 2013), addressed by the parties in supplemental letters (Docket Nos. 29, 30), does not affect the Court's analysis or its ultimate conclusion.  To be sure, the facts and claims in that case are similar in certain respects to those in this case, and the court in that case held that annual certifications alone were insufficient to hold the individual operator of the mortgage underwriter liable under the False Claims Act.  *See Reunion Mortg.*, 2013 WL 5944252, at *6. But the case is distinguishable because "neither of the FCA claims actually allege[d] that [the individual defendant]'s liability [was] premised on his annual certification to the FHA that [the mortgage-underwriting company was] in compliance with DEL program and FHA requirements."  *Id.*  By contrast, the Amended Complaint in this case alleges that Movtady

---

[3]   As the Government argues (Am. Compl. ¶¶ 113-20; Gov't's Mem. 8), the payments at issue are also actionable under the False Claims Act because they are alleged to have fraudulently induced FHA's continuing issuance of mortgage insurance for Defendants' benefit. *See Wells Fargo*, 2013 WL 5312564, at *22.

submitted false claims when he submitted the annual certifications.  (Am. Compl. ¶¶ 123, 128).  In dicta, the *Reunion Mortgage* Court did partially accept the theory urged by Defendants here, that the DEL program's annual certifications are conditions of participation rather than payment.  *See* 2013 WL 5944252, at *6.  But that dictum is obviously not binding here and, to the extent it is inconsistent with the conclusions reached in *Wells Fargo*, the Court declines to follow it.

      Next, Defendants argue on two grounds that some of the Government's claims are time barred.  (Defs.' Mem. 9-10).  First, because the applicable provisions of Title 31, United States Code, Section 3729, were passed as part of the Fraud Enforcement and Recovery Act of 2009 ("FERA") and had an effective date of June 7, 2008, *see* 111 Pub. L. No. 21, 123 Stat. 1621, § 4(f) (2009), Defendants argue that claims accruing prior to that date are barred.  (Defs.' Mem. 9).  Second, Defendants contend that the claims regarding two of the properties described in the Amended Complaint are barred by the False Claims Act's six-year statute of limitations.  *See* 31 U.S.C. § 3731(b)(1).  (Defs.' Mem. 10).  The first point, however, overlooks the fact that, even before FERA, Section 3729 created liability for the sorts of acts alleged in the Amended Complaint, *compare* 31 U.S.C. § 3729(a), *with* 31 U.S.C. § 3729(a) (2006), and that, with respect to claims before June 7, 2008, the Government expressly relies on the earlier version of the statute.  (Gov't's Mem. 5 n.2).  The second point falls short because the statute of limitations does not begin to run until HUD pays out on the insurance plan, and the payments at issue here are alleged to have taken place within the applicable limitations period.  *See Wells Fargo*, 2013 WL 5312564, at *10 n.8; *see also United States ex rel. Kreindler & Kreindler*, 985 F.2d 1148,

9

1157 (2d Cir. 1993) (noting that the statute of limitations "begins to run on the date the claim is made, or, if the claim is paid, on the date of payment." (internal quotation marks omitted)).[4]

Third, Defendants contend that the Government fails to adequately allege causation with respect to its False Claims Act claims. (Defs.' Mem. 10-11). As the Court noted in *Wells Fargo*, there is a Circuit split on the question of what causation standard applies to FCA claims. *See* 2013 WL 5312564, at *24. Specifically, the Seventh Circuit has held that the Government need only demonstrate that it "would not have guaranteed the loan 'but for' the false statement" at issue, *see United States v. First Nat'l Bank of Cicero*, 957 F.2d 1362, 1374 (7th Cir. 1992), while the Third and Fifth Circuits have held that "the United States must demonstrate that the events which caused the defaults were related to the false statements in the applications," *United States v. Miller*, 645 F.2d 473, 475 (5th Cir. Unit A May 1981); *accord United States v. Hibbs*, 568 F.2d 347, 350-51 (3d Cir. 1977). Although Defendants invoke the stricter of those two standards (Defs.' Mem. 10), as Wells Fargo did in its case, the Court need not decide whether they are correct in doing so because here, as in *Wells Fargo*, the allegations in the Amended Complaint are adequate under either theory. That is, the applicable HUD rules are "meant to ensure that borrowers are able to afford their homes; failure to uphold these regulations 'could very well be the major factor for subsequent defaults,' and thus satisfy the requirement that 'the defaults were related to the false statements in the application.'" 2013 WL 5312564, at *24 (quoting *Miller*, 645 F.2d at 476). Thus, the Government has adequately alleged that the certifications proximately caused its financial losses.

---

[4] In *Wells Fargo*, this Court held that the Wartime Suspension of Limitations Act ("WSLA"), 18 U.S.C. § 3287, tolls the statute of limitations in cases brought under the False Claims Act "[w]hen the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces." *See* 2013 WL 5312564, at *10-14. Although the Government curiously does not make the argument in this case, for the reasons set forth in *Wells Fargo*, the WSLA provides an additional reason to conclude that the claims in this case are timely.

Defendants' final argument is that the Amended Complaint fails to satisfy the heightened pleading requirements of Rule 9(b) because there are insufficient allegations of Defendants' scienter. (Defs.' Mem. 11-13). In general, "[t]he purpose of Rule 9(b)'s specificity requirement is to provide the defendant with fair notice of a plaintiff's claim and adequate information to frame a response." *United States ex rel. Tiesinga v. Dianon Sys., Inc.*, 231 F.R.D. 122, 123 (D. Conn. 2005); *see also Wells Fargo*, 2013 WL 5312564, at *15. To satisfy Rule 9(b), therefore, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (internal quotation marks omitted). The allegations in the Amended Complaint satisfy that standard, as it is permissible in this type of case to "plead each scheme 'with particularity, and provide[] examples of specific false claims submitted to the government pursuant to that scheme.'" *Wells Fargo*, 2013 WL 5312564, at *16 (alteration in original) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). Because the Amended Complaint does exactly that (Am. Compl. ¶¶ 61-112), Defendants have fair notice of the Government's claims, and the requirements of Rule 9(b) are met.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED on consent with respect to the Government's common-law claims, which are dismissed, and DENIED with respect to the Government's False Claims Act claims.

The Clerk of Court is directed to terminate Docket Number 19.

SO ORDERED.

Dated: April 7, 2014
New York, New York

/s/ Jesse M. Furman
JESSE M. FURMAN
United States District Judge